UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHARLES A. BENSON, | |
| Petitioner, | |
| v. | CAUSE NO.: 3:22-CV-293-MGG |
| WARDEN, | |
| Respondent. | |

OPINION AND ORDER

Charles A. Benson, a prisoner without a lawyer, filed a habeas corpus petition challenging a disciplinary proceeding at New Castle Correctional Facility (NCN 21-07-0026) in which he was found guilty of battering another inmate in violation of disciplinary code A-102. (ECF 1.) For the reasons stated below, the petition is denied.

The charge against Mr. Benson was initiated on July 19, 2021, when Officer K. Grinstead wrote a conduct report stating as follows:

> On the above date & time [7/19/2021 at 2:22 p.m.], I, Ofc K. Grinstead responded to a 10-10 in O-Unit Pop. 1. Upon arrival to the recreation pad door of OI, I witnessed Offender C. Benson # 202702 & Offender P. Gleaves # 164418 rolling on the ground of the rec pad striking each other with sharp pointed objects. Both objects appeared to be made out of metal and approx. 6 inches in length. Offender Benson had several injuries & stab wounds to his head, torso, and back. Offender Benson was placed in the infirmary. . . . Offender Gleaves refused medical treatment, but appeared to have wounds to his head on visual inspection by staff members.

(ECF 11-1). Photographs were taken of both Mr. Benson and Mr. Gleaves, as well as a "7 inch weapon" recovered after the incident. (ECF 11-2; ECF 12; ECF 13.) Records were also submitted detailing their physical injuries. (ECF 12; ECF 13.)

On July 22, 2021, Mr. Benson was formally notified of the charge and given a copy of the conduct report. (ECF 11-4; ECF 11-1.) He pled not guilty and requested a lay advocate, and one was appointed for him. (*Id.*; ECF 11-5.) He did not request any witnesses, but requested "camera review" for July 19, 2021, from 1:50 p.m. to 2:45 p.m. for the "dayroom back by rec door" and the "rec pad." (ECF 11-4.) He wanted this evidence to show that "it started in the dayroom and ended up in rec pad," and that the "other offender was never supposed to be out." (ECF 11-4 at 1.)

Prior to the hearing, the hearing officer reviewed the video evidence as requested and summarized it as follows:

> The video from inside pod 1 and pod1 rec. pad for the above case was reviewed from 13:50 to 14:45 as the offender requested. Video from inside pod 1 shows offender Gleaves walk down the stairs to offender Benson Charles #202702. Benson and Gleaves, Robert begin to fight in the dayroom. I can see offender Benson with a weapon in his hand. This looks to be the weapon in the evidence photo. Benson makes stabbing and slashing motions toward offender Gleaves. Offender Gleaves is seen with a weapon in his hand making stabbing and a slashing motion toward Benson. [T]he two offenders move out of the cameras view toward the rec. pad. The video from the rec. pad shows offenders Benson and Gleaves move thru the doorway on to the rec. pad with offender Thompson, Deandre pulling on offender Gleaves. Benson and Gleaves fall to the floor. Benson is on top of Gleaves and Gleaves can be seen with the weapon making stabbing motions on Benson's back. "Note" the puncture wounds on offender Benson's back are in the same area where Gleaves is making the stabbing motions. Offender Boyd, Dabian moves onto the rec. pad and attempts to pull the two offenders apart. Offenders Schrock, Matthew and Santana, Steven move on to the rec. pad and start pulling Benson and Gleaves apart. Sgt. Lee moves onto the rec. pad and deploys O.C.

2

> Offender Boyd picks up something from the rec. pad floor and puts it in his pocket. Offenders Benson and Gleaves are pulled apart. Offender Schrock pulls Benson away from Gleaves and offender Thompson punches Benson at least three times with a closed fist. Sgt. Lee deploys O.C. toward offenders Thompson, Benson and Schrock. More staff arrive, Benson and Gleaves were restrained and the area is cleared. "[N]ote" I can see what looks like blood on the floor of the rec. pad where offenders Benson and Gleaves fell to the floor.

(ECF 11-8.) The video evidence was not turned over to Mr. Benson so as not to disclose "the camera angle, dead spots, quality of the video recordings or where to hide out of the camera's view," thus comprising the security of the facility. (*Id.*)

On July 27, 2021, the hearing officer held a hearing on the charge. He noted that Mr. Benson pled not guilty and made the following statement in his defense: "I have been working as a law clerk for the Capt. They let offenders out that should not have been out. They came at me. I think that I did not get all of this from just one guy." (ECF 11-7.) The hearing officer considered this statement, along with the other evidence, including staff reports, pictures, medical records, and the video evidence, and found Mr. Benson guilty. (*Id.*) Mr. Benson was sanctioned with the loss of earned-time credits, temporary placement in restrictive housing, and a demotion in credit-earning class. (*Id.*) The hearing officer stated that he chose those sanctions due to the seriousness of the offense, the frequency and nature of Mr. Benson's disciplinary infractions, and the degree to which his conduct disrupted the facility and/or endangered staff. (*Id.*)

When prisoners lose earned-time credits in a disciplinary proceeding, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) at least 24 hours advance written notice of the charge; (2) an opportunity

to be heard by an impartial decisionmaker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the decisionmaker of the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there also must be "some evidence" to support the hearing officer's decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Mr. Benson raises the following claims in his petition: (1) the hearing officer overlooked exculpatory evidence and denied him a fair hearing: (2) the hearing officer was not impartial; and (3) there was insufficient evidence of his guilt because he was acting in self-defense. (ECF 1 at 2-3; ECF 17; ECF 19.)

He first claims that the hearing officer "suppressed or omitted" exculpatory evidence by overlooking the fact that he was acting in self-defense. (ECF 1 at 2.) By his account, he was "just walking in circles in the dayroom" when "people ran on him and started swinging first." (*Id.*) He argues that the hearing officer unfairly cast him as the "aggressor" in this incident. (*Id.*)

Inmates have a due process right to request and present evidence when consistent with institutional safety and correctional goals. *Wolff*, 418 U.S. at 564. However, the right only extends to evidence that is exculpatory. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). "Exculpatory" in this context means evidence that "directly undermines the reliability

4

of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996).

The only evidence Mr. Benson requested prior to the hearing was a review of the surveillance video. (ECF 11-4.) The hearing officer reviewed this evidence pursuant to his request and considered it in making his decision. To the extent Mr. Benson is complaining that the video evidence was not turned over to him, under the Due Process Clause he had a right to request evidence in his defense, but not necessarily to personally review it. *White v. Ind. Parole Bd.*, 266 F.3d 759, 767 (7th Cir. 2001). That is because "prison disciplinary boards are entitled to receive, and act on, information that is withheld from the prisoner and the public." *Id.* The court has reviewed the surveillance video, as well as the photographs and other documents submitted by respondent under seal, and concludes that it would compromise prison security and invade the privacy rights of third parties if this evidence was disclosed to Mr. Benson.[1] *See Wolff*, 418 U.S. at 566; *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011); *Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003). They are appropriately kept under seal. Based on the court's review, there is also nothing exculpatory within these records. *Meeks*, 81 F.3d at 720.

Although Mr. Benson believes the hearing officer overlooked the fact that he was only acting in self-defense, "self-defense" and "justification" are not recognized defenses in the prison disciplinary context. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir.

---

[1] The Warden has provided Mr. Benson with a copy of the photographs and medical records pertaining to him, but not those of the other inmate involved. (*See* ECF 11 at 3 n.2.)

5

2007). That is because "encouraging inmates to combat violence with more violence subverts a core prison function of ensuring order and safety within the institution." *Id.* The video evidence does bear out his statement that he was "walking in circles in the dayroom" when this incident started, and it also appears that the other inmate approached him first, although most of their initial interaction occurred slightly out of the view of the camera. What can be seen, however, is that within seconds of being approached by the other inmate, Mr. Benson assumed a fighting stance and began kicking and swinging his arm at the other inmate. As the hearing officer observed, he appears to have a weapon in his hand. Even if he is correct that the other inmate "started it," this did not give him a right to use violence. *Scruggs*, 485 F.3d at 939. He has not established a due process violation.

He relatedly claims that the hearing officer was not impartial because the evidence showed that he was acting in self-defense. (ECF 1 at 2.) Prison adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." *Piggie*, 342 F.3d at 666. Due process prohibits a prison official who was personally and substantially involved in the underlying incident from acting as a decisionmaker in the case. *Id.* Due process is not violated simply because the hearing officer knew the inmate, presided over a prior disciplinary case, or had some limited involvement in the event underlying the charge. *Id.*

Mr. Benson does not argue—nor does the record reflect—that the hearing officer was involved in the underlying incident leading to the disciplinary charge. Instead, he argues that the hearing officer was not impartial because he refused to consider that he

6

was only acting in self-defense. In his view, the other inmate never should have been allowed out of his cell.[2] The mere fact that the hearing officer ruled against him does not establish impermissible bias. *Liteky v. United States*, 510 U.S. 540, 555 (1994). Moreover, as stated above, a self-defense theory would not have exculpated him from the charge. *Scruggs*, 485 F.3d at 939. He has not demonstrated impermissible bias.

He next challenges the sufficiency of the evidence. The "some evidence" test "is a lenient standard, requiring no more than a modicum of evidence." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). "Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* A conduct report alone can be sufficient evidence to support a finding of guilt. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). Likewise, circumstantial evidence can be sufficient to satisfy the "some evidence" test. *Meeks v. McBride*, 81 F.3d 717, 721 (7th Cir. 1996). It is not the province of the federal court to reweigh the evidence to make its own determination of guilt or innocence. *Webb*, 224 F.3d at 652. Rather, the only question is whether there is sufficient evidence to support the hearing officer's determination. *Id.*

Mr. Benson was found guilty of Offense A-102, "Battery Against Offender," which is defined by the Indiana Department of Correction ("IDOC") disciplinary code

---

[2] A report Mr. Benson attaches to his traverse reflects that Officer Grinstead was "running detail and kitchen workers" on the date in question when he saw Mr. Gleaves leave his cell. (ECF 17-1 at 3.) He told him to go back to his cell, but Mr. Gleaves disobeyed him. (*Id.*) The officer went out to the hallway to get additional staff to assist him in forcing Mr. Gleaves to return to his cell, but by this time, an emergency signal was called due to the fight between Mr. Gleaves and Mr. Benson. (*Id.*)

7

as: "Committing battery[3] against another offender (1) with a weapon; (2) with bodily fluids, including but not limited to saliva, urine, feces, semen, or blood; or (3) resulting in serious bodily injury." (ECF 11-13 at 1.) The video evidence, photographs of the other inmate showing visible flesh wounds, and Officer Grinstead's account that he witnessed Mr. Benson and the other inmate "rolling on the ground . . . striking each other with sharp pointed objects" is sufficient evidence to support the guilty finding. Mr. Benson argues that there was insufficient evidence that the other inmate suffered "serious bodily injury." However, under the disciplinary code he could be found guilty of battery if he used a weapon, without any showing that there was serious bodily injury. (ECF 11-13 at 1.) As outlined, there was sufficient evidence that he did.

Within this claim, Mr. Benson argues that state law gave him a right to assert a claim of self-defense in response to the charge. (ECF 17 at 2.) To the extent he is claiming the hearing officer violated state law by failing to consider his claim of self-defense, this does not present a cognizable basis on which to grant him federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (errors of state law are not cognizable on federal habeas review); *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (violation of state law or prison policy did not amount to a due process violation in prison disciplinary proceeding). He may be arguing that the Fourteenth Amendment entitled him to assert this state law defense, but the Seventh Circuit has rejected this precise argument. *Rowe v. DeBruyn*, 17 F.3d 1047, 1052 (7th Cir. 1994) ("[W]e consider if

---

[3] Battery, in turn, is defined as "[k]nowingly or intentionally touching another person in a rude, insolent or angry manner." (ECF 11-14 at 3.)

the right to self-defense is a fundamental constitutional right within the Due Process Clause itself. We conclude that it is not. . . [P]risoners do not have a fundamental right to self-defense in disciplinary proceedings.").

He also argues in his traverse that the failure to consider this defense violated his rights under the Equal Protection Clause, because non-prisoners are allowed to assert the defense in response to criminal charges. (ECF 17 at 2.) He did not include such a claim in his petition, and a traverse is not the place to be raising a new claim for the first time. *See* Rule 2(c)(1) of the RULES GOVERNING SECTION 2254 CASES (providing that all grounds for habeas corpus relief must be contained in the petition). In any event, this additional claim does not entitle him to federal habeas relief. Prisoners are not a suspect class under the Equal Protection Clause, and so the Clause is not violated if there is some rational basis for the difference in treatment. *Johnson v. Daley*, 339 F.3d 582, 586 (7th Cir. 2003). The Seventh Circuit has recognized an important reason for declining to permit prisoners to assert self-defense in a disciplinary proceeding: it encourages inmates to "combat violence with more violence" which would "subvert[] a core prison function of ensuring order and safety within the institution." *Rowe*, 17 F.3d at 1052-53. His equal protection claim is unavailing.

Finally, he may also be arguing that the initiation of the charge was unfair because the other inmate never should have been allowed out of his cell in the first place. "[P]risoners are entitled to be free from arbitrary actions of prison officials, but . . . even assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due process."

9

*McPherson*, 188 F.3d at 787. As outlined in this order, Mr. Benson has not demonstrated that his federal due process rights were violated in the disciplinary proceeding. Therefore, the petition is denied.

    For these reasons, the court:

    (1) GRANTS the motion to maintain evidence under seal (ECF 15);

    (2) DENIES the petition (ECF 1); and

    (3) DIRECTS the clerk to close this case.

    SO ORDERED on October 20, 2022

                                                s/ Michael G. Gotsch, Sr.
                                                Michael G. Gotsch, Sr.
                                                United States Magistrate Judge